**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 22-CR-0120 (DLF)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROY TATUM,** | : | |
| | : | |
| **Defendant.** | : | |


**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

      The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Roy Tatum, be detained pending trial pursuant, *inter alia*, to 18 U.S.C. § 3142 (f)(1)(D) and 18 U.S.C. § 3142 (f)(1)(E). As discussed further below, the defendant stands charged for the unlawful possession of firearms, and his conduct demonstrates that there are no conditions of release that would reasonably assure the safety of any other person and the community. The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**BACKGROUND**

      Roy Tatum, a forty-five-year-old male and thrice convicted murderer, has been charged by Indictment with two counts of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1). At the defendant's initial appearance, the government intends to orally move for detention pending trial pursuant to the above-referenced provisions of the federal bail

statute, and any additional provisions that may apply upon review of the Pretrial Services Agency report. Mr. Tatum, having been previously convicted of serious felony offenses including multiple homicides and related weapons offenses, knew that he was not allowed to possess firearms or ammunition, and still, possessed two firearms: (1) a loaded .45 caliber Glock 36 and (2) a loaded 7.26 x 39mm Zastava Arms Model PAP M92PV. Mr. Tatum's previous history of violence - murders, armed offenses and, and now, possession of two loaded handguns, support the government's contention that the defendant should be held without bond pending trial to ensure the safety of the community.

## **ARGUMENT**

The government submits that the defendant is a danger to the community and pretrial detention is warranted. Under Section 3142(g), the Court must analyze four factors in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).  A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

### A.  Nature and Circumstances of the Offenses Charged

The first factor to be considered, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Mr. Tatum was not only illegally in possession of two

firearms, but he was also found residing in an apartment from which a large amount of suspected narcotics and paraphernalia were recovered.

On October 27, 2021, at approximately 6:04 a.m., members of the Metropolitan Police Department (hereinafter "MPD") executed a D.C. Superior Court search warrant at 238 35th Street Northeast, Apartment #2, Washington D.C. Apartment #2 is a two-bedroom, one bathroom apartment. The front door of the apartment opens into the living room. Next to the living room, without a barrier between the two, is a potential dining area. Past the dining area are two hallways that extend from the living-dining room area toward the rear of the apartment. The left hallway leads through the kitchen to the bedroom at the rear of the apartment (hereinafter "Bedroom 2"). The right hallway leads past the bathroom to another bedroom (hereinafter "Bedroom 1").

Officers banged loudly on the front door and yelled "Police! Search Warrant! Open the door!" prior to making entry into the apartment. When there was no answer at the front door, officers forced entry. As they entered, they observed Mr. Tatum walk out of the bathroom, wearing only shorts and slippers with a toothpick in his mouth. No one else was in the living-dining room area, the hallway in front of the bathroom, or in Bedroom 1. Tatum was immediately stopped in the hallway outside of the bathroom. Officers found two other individuals in the apartment when they entered. A woman was stopped in the kitchen and the leaseholder was found sitting in Bedroom 2.

Within seconds of the defendant's stop, an Emergency Response Team officer secured the bathroom and observed what appeared to be narcotics on the floor and in the toilet. The officer also saw a cellular phone on the edge of the bathroom sink. The screen of the cellular telephone was bright, as if someone had just used it. Officers later noticed that the home screen background

photograph on the cellular telephone was of Roy Tatum. Officers seized the cellular telephone, along with six small zip baggies containing a white-powder substance believed to be fentanyl, two bags of a white-powder substance believed to be fentanyl, and one small zip baggie containing a white rock-like substance believed to be cocaine base. Additional small zip baggies containing a white-powder substance believed to be fentanyl were found in Bedroom 2 and the kitchen. Other drug paraphernalia, including empty zips, was also seized from the kitchen.

Mr. Tatum was asked by the officers that first entered the home for his name. He provided the name "Roy Tatum." When asked whether he lived in apartment, the defendant said, "No, sir. I'm a guest." He said he had another address. In the apartment was a fawn-colored pit bull that Mr. Tatum identified as his. In the dining/living room area were the dog's crate and a bag of dog toys. The dog's food and several types of dog treats were on top of the refrigerator in the kitchen.

While detained in the hallway, Mr. Tatum requested his asthma inhaler and directed officers to a pair of jeans in Bedroom 1, which the defendant confirmed were his. Specifically, an officer asked Tatum, "Sir, is it these jeans right here?" Tatum responded, "Yes, sir." An officer then retrieved a red asthma inhaler from the pocket of the jeans identified by Tatum in Bedroom 1. Officers later found a wallet with Tatum's driver's license and a .45 caliber Glock magazine containing six rounds of ammunition in pockets of the same pair of jeans.

Additionally, officers seized several items from the closet of Bedroom 1, including a clear plastic bag containing a white rock-like substance with a weight of 71 grams believed to be cocaine base and a stack of $20, $10, and potentially other denominations, wrapped with orange rubber bands totaling $3000. The stack was sitting on the shelf, uncovered and visible to anyone with a

view of the closet. Police recovered $1009.00 wrapped with a single orange rubber band from the pocket of the shorts that Mr. Tatum was wearing when police breached the apartment.

Hidden behind the refrigerator in the kitchen were the two illegal firearms. One was determined to be a Glock 36 .45 caliber pistol bearing serial number YKM552. The Glock had one round of .45 caliber ammunition in the chamber and six rounds of .45 caliber ammunition in the magazine. The second firearm was determined to be a Zastava Arms Model PAP M92PV 7.26 x 39mm firearm. Thirty rounds of 7.26 x 39mm ammunition were recovered from the large capacity magazine. The .45 caliber was found sitting slightly underneath the 7.26 x 39mm firearm. Both firearms appeared to be free of dirt and debris.

### B. <u>Weight of the Evidence Against the Defendant</u>

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against Mr. Tatum is strong. As set forth above, MPD officers recovered two loaded firearms, including a .45 caliber Glock, pursuant to a search warrant, from the apartment where the defendant was residing. They also recovered a Glock magazine with six rounds of .45 caliber ammunition in his jeans pocket.

The results of DNA testing also corroborated the defendant's possession of the firearms. Wet/dry swabs were taken of: (a) the handle, back of slide, trigger and magazine release of the Glock 36 .45 caliber pistol (Item #1c.); (b) the magazine breach of the Glock 36 .45 caliber pistol (Item #1d.); (c) the charging handle, grip, safety switch and magazine release of the Zastava Arms Model PAP M92PV 7.26 x 39mm pistol (Item #2b.); and (d) the magazine breach of the Zastava Arms Model PAP M92PV 7.26 x 39mm pistol (Item #2c.). Signature Science laboratory provided a report dated March 2, 2022.

The DNA profile obtained from Item #1c. was interpreted as a mixture of two individuals with at least one male contributor. Obtaining this mixture profile is approximately 168 septillion times more likely if the DNA originated from Roy Tatum and one unknown, unrelated individual than if the DNA originated from two unknown, unrelated individuals.

The DNA profile obtained from Item #1d. was interpreted as a mixture of two individuals with at least one male contributor. Obtaining this mixture profile is approximately 11.5 octillion times more likely if the DNA originated from Roy Tatum and one unknown, unrelated individual than if the DNA originated from two unknown, unrelated individuals.

The DNA profile obtained from Item #2b. was interpreted as a mixture of three individuals with at least one male contributor. Obtaining this mixture profile is approximately 14.1 octillion times more likely if the DNA originated from Roy Tatum and two unknown, unrelated individuals than if the DNA originated from three unknown, unrelated individuals.

The DNA profile obtained from Item #2c. was interpreted as a mixture of three individuals with at least one male contributor. Obtaining this mixture profile is approximately 13.1 octillion times more likely if the DNA originated from Roy Tatum and two unknown, unrelated individuals than if the DNA originated from three unknown, unrelated individuals.

## C.   Mr. Tatum's History and Characteristics

The third factor, the history and characteristics of the person, weighs heavily in favor of detention. Mr. Tatum's prior criminal conduct is of the most serious nature. The defendant was previously convicted of in D.C. Superior Court case number 1994 FEL 004701 of first-degree murder, felony murder, conspiracy, first degree burglary, possession of a firearm during a dangerous or violent offense. The defendant was sentenced to a total sentence of 66 years and 8

months to life. In D.C. Superior Court case number 1995 FEL 004249, Mr. Tatum was convicted of first-degree murder while armed, possession of a firearm during a violent or dangerous offense, and two charges of carrying a pistol without a license. In that case, he was sentenced to 25 years to life. After being incarcerated for a total period of almost twenty-six years, the defendant was released, on February 27, 2020, under the Incarceration Reduction Amendment Act of 2019, D.C. Code § 24-403.03 et seq., and began five years of supervised probation.

Despite receiving the significant benefit of release to community supervision following three homicide convictions and related charges, the defendant responded by violating the terms of his probation. Notably, Mr. Tatum was arrested after his release on two separate occasions approximately seven months apart—for malicious destruction of property (2E00699281, Maryland) in March 2021 and for the offenses described *supra*.

Mr. Tatum's criminal history further demonstrates the specific danger he poses to the community: the use of illegal firearms in the commission of crimes of violence. Mr. Tatum should not be released.

### D.   Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, also weighs in favor of detention. Together with his prior criminal conduct – murders and related convictions, in this case the defendant's possession of two loaded firearms, one with a large capacity magazine, is gravely concerning. It appears he has been undeterred from illegally possessing lethal weapons, despite having been convicted of using firearms in the commission of multiple murders. As amply demonstrated by Mr. Tatum's prior conduct, the firearms that he possessed in this case have the potential to cause serious bodily injury to, or the death of, other members of the community. In order to protect the

community, the defendant should be held without bond pending trial.

## CONCLUSION

The Court should grant the government's motion to detain Mr. Tatum pending trial because

he has demonstrated that he is a danger to the community.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:      /s/ Emory V. Cole
Emory V. Cole
P.A. Bar No. 49136
Ariel L. Dean
Massachusetts Bar No. 694168
Assistant United States Attorneys
United States Attorney's Office for D.C.
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
E-mail: Emory.Cole@usdoj.gov
Telephone: (202) 252-7692


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense

counsel, via the Electronic Case Filing (ECF) system, this 6th day of April 2022.


/s/ Emory V. Cole
EMORY V. COLE
Assistant United States Attorney